IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
UNITED STATES OF AMERICA    )
                            )    CRIMINAL ACTION NO.
       v.                   )        2:25cr586-MHT
                            )            (WO)
RICKEY JOHNSON              )
```

ORDER AND OPINION REGARDING DETENTION

Defendant Rickey Johnson was indicted for possessing a firearm as a person with a felony conviction, in violation of 18 U.S.C. § 922(g)(1).  A United States Magistrate Judge ordered him detained.  This case is now before the court on his motion to reverse the magistrate judge's order pursuant to 18 U.S.C. § 3145(b).  The court has conducted an independent and de novo review of the record and held its own evidentiary hearing.  Based on this review, and with the benefit of a psychological evaluation that the magistrate judge did not have at the original hearing, the court will reverse the detention order and order Johnson's release pending trial.  His release will be subject to his competency-restoration

proceedings (arising out of an intervening finding by the court that he is currently mentally incompetent to stand trial) and a set of stringent conditions, including that he be subject to home detention and location monitoring and that he participate immediately in recommended mental-health and substance-abuse treatments.

## I. Legal Standard

The Bail Reform Act requires that a defendant be released on personal recognizance or an unsecured appearance bond "unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b). Where a court finds that release without conditions would not suffice to protect these interests, the court nevertheless "shall order the pretrial release of the person— ... (B) subject to the least restrictive further

2

condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). Therefore, pretrial detention is permissible only when the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

The burden is on the government to prove a flight risk or dangerousness that cannot be reasonably addressed with conditions of release. *See United States v. King*, 849 F.2d 845, 488-91 (11th Cir. 1988) (setting forth procedures for district courts to follow on motions to revoke or amend detention orders entered by magistrate judges). An unmanageable risk of flight must be proven by a preponderance of the evidence, while dangerousness must be proven by clear and convincing evidence. *See id.*

at 489, n. 3.  In determining whether pretrial detention is appropriate, district courts have "substantial latitude." *Id*. at 487.

The court must consider four factors in making its § 3142(e)(1) determination of the presence or absence of adequate conditions for release: (1) the nature and circumstances of the offense charged, including whether the offense involved, among other things, a firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and (4) the nature and seriousness of the danger that would be posed by the person's release. § 3142(g).  Consideration of such factors does not

4

"modify[] or limit[] the presumption of innocence." § 3142(j).

This court's review of the magistrate judge's detention decision is de novo. *See United States v. Hurtado*, 779 F.2d 1467, 1481 (11th Cir. 1985) (stating that the district court "is not constrained to look for abuse of discretion or to defer to the judgment of the prior judicial officer" when reviewing detention decisions). A reviewing court may consider new evidence. *See King*, 849 F.2d at 491.

## II. Discussion

### A.

In reviewing the record de novo, the court has considered the transcript of the evidence presented at the initial detention hearing before the magistrate judge. The court also has before it new, supplemental evidence: a psychological evaluation conducted by Dr.

Kristine Lokken after the magistrate judge made his detention decision.[1]

In his detention order, the magistrate judge determined that the government did not meet its burden of showing by a preponderance of the evidence that Johnson poses an unmanageable flight risk. Based on all the evidence, including the new evidence, and for the reasons stated by the magistrate judge, the court agrees with this determination. The magistrate judge further determined, however, that the government did meet its burden of showing by clear and convincing evidence that Johnson presented an unmanageable risk of danger. Turning again to all the evidence, including the new evidence, the court reaches a different conclusion and finds that the government has not met this burden.

_____

1. Dr. Lokken in her evaluation addressed not only some of the issues presented regarding Johnson's detention, but also whether he is competent to stand trial.

6

In concluding that the government had met its burden of demonstrating that Johnson presents an unmanageable risk of danger, the magistrate judge analyzed each of the four factors laid out in 18 U.S.C. § 3142(g) and described above. First, the court will separately address each of the magistrate judge's analyses of the four required factors--albeit in light of additional evidence that was not before the magistrate judge. And, second, the court will consider the factors together, that is, from the standpoint of a totality of the circumstances and determine whether the concerns raised by these factors present a risk of danger that could not be reasonably addressed with conditions of release.

## B.

*The nature and circumstances of Johnson's alleged offense*: The magistrate judge noted that, pursuant to § 3142(g)(1), "the circumstances surrounding the offense

7

here provide ... support for detention in that Defendant
Johnson had a firearm on his person as he ran from law
enforcement through areas readily accessible to innocent
members of the public." Detention Order (Doc. 13) at 3.
Moreover, while stating that not every case of possessing
a firearm by a person with a felony conviction will
warrant detention, the magistrate judge noted that the
Bail Reform Act expressly directs the court, in
addressing this factor, to consider whether an offense
involves a firearm.

*The weight of the evidence*: The magistrate judge
described the weight of the evidence against Johnson as
"strong." *Id.* The video footage of Johnson's arrest
shows that he possessed a firearm on the date of the
offense, and it is undisputed that he had a prior felony
conviction at that time. The court agrees with the
magistrate judge's conclusions based on the
then-available evidence.

8

However, if the weight of the evidence includes any defenses a defendant might have to the consideration of the evidence at trial, the magistrate judge did not have a full picture before him. At the competency hearing leading up to the court's finding that Johnson is mentally incompetent to stand trial, defense counsel stated that there was a serious possibility that Johnson would assert an insanity defense if he is later restored to competency. The reasonable possibility of this defense to Johnson's culpability was not before the magistrate judge.

*Johnson's history and characteristics:* The magistrate judge observed that "Johnson is a lifelong resident of the Middle District of Alabama" but that he "has spent his adult life engaging in various types of criminal activity within the community." *Id.* The magistrate judge rightly placed limited weight on Johnson's older convictions and those that involved

personal drug use, which he noted comprise most of Johnson's criminal record. However, he stated that this "is not the first occasion when Defendant Johnson appears to have resisted when confronted by law enforcement or to have possessed a firearm despite a federal statutory prohibition." *Id.* at 4. Thus, the magistrate judge concluded that "[i]t is the totality of Defendant Johnson's history and characteristics--including the commission of multiple new criminal offenses while under conditions of release--that the court finds to favor detention." *Id.*

While the statute directs that, in addressing this history-and-characteristics factor, the court should consider the defendant's mental health, the magistrate judge did not have the benefit of Dr. Lokken's intervening mental-health evaluation finding that

10

Johnson suffers from a severe intellectual disability.[2] In her report, Dr. Lokken stated that "Johnson's cognitive profile is characterized by significant intellectual and adaptive limitations rather than traits associated with predatory or intentional violence." Lokken Competency Evaluation (Doc. 29-1) at 2. "His risk profile," according to her, "is best conceptualized as one of functional vulnerability rather than

_____

2. As additional background, the court notes that, according to Dr. Lokken, Johnson has "sever[e] ... adaptive functioning deficits, and ... additional cognitive decline related to neurological injury and chronic substance use." Lokken Competency Evaluation (Doc. 29-1) at 2. She determined that he has an IQ of 60, which is in the 0.4th percentile for adults. *See id.* at 11. Further, his performance on the four composite indices administered by Dr. Lokken corresponded to the "exceptionally low" and "below average" ranges, falling at or below the third percentile. *Id.* Moreover, she noted that Johnson has the reading ability of a first grader and requires assistance from family members to complete his daily adult responsibilities, such as understanding bills. In sum, dJohnson's cognitive "deficits substantially impair his ability to apply information in real-world contexts." *Id.* at 1.

dangerousness." *Id.* at 3. She concludes that his "likelihood of engaging in dangerous behavior in the community is expected to remain low" if he receives "appropriate supervision," "mental health treatment," and "substance use treatment." *Id.*

Moreover, there is a colorable argument that the weight of Johnson's criminal history should be reduced even more given that, after further research, it might be shown that this history is a product of his lifelong intellectual disability.

*The nature and seriousness of the danger Johnson's release would pose to the community:* Lastly, the magistrate judge determined that the potential that Johnson would illegally possess a firearm, illegally possess narcotics, and/or flee from law enforcement could lead to a "particularly dangerous outcome." Detention Order (Doc. 13) at 4. However, as stated above, his risk profile would likely "remain low" if he had appropriate

12

supervision, mental-health treatment, and substance-use treatment. Lokken Competency Evaluation (Doc. 29-1) at 3.

## C.

Finally, in determining whether there is a "condition or combination of conditions [that] will reasonably assure ... the safety of any other person and the community," 18 U.S.C. § 3142(e)(1), the court now considers the above four factors from the perspective of a totality of the circumstances. The court is convinced that, while the charge against Johnson is quite serious and while his conduct at the time he was arrested is very concerning, his conduct appears to be the further product of the "lifelong nature of [his] Intellectual Disability," and his intellectual deficits, which likely influenced this behavior, can be managed "within a structured and supportive environment." Lokken

13

Competency Evaluation (Doc. 29-1) at 2.  In other words,
his "risk profile" is still "best conceptualized as one
of functional vulnerability rather than dangerousness,"
that is, not "traits associated with predatory or
intentional violence," *id.,* and thus his "likelihood of
engaging in dangerous behavior in the community [would]
remain low" if--and the emphasis should be placed on
if--he has appropriate supervision, mental-health
treatment, and substance-abuse treatment.  *Id.* at 3.  The
court believes that it can impose conditions that meet
these requirements and thereby "reasonably assure ... the
safety of ... the community."  18 U.S.C. § 3142(e)(1).
These conditions include home detention,[3] location

---

     3.  In the pretrial services report prepared and
relied upon at the initial detention hearing, the United
States Probation Office officer noted that Johnson has
resided at his current home since 2018 and he reported
that he could return there if released.  *See* Pretrial
Services Report (Doc. 12-3) at 1.  According to the
testimony at that hearing, Johnson lives at his residence
alone, while his girlfriend has access and would

monitoring, and the treatments identified in Dr. Lokken's report.

These conditions will reasonably protect the safety of the community by ensuring that his whereabouts are always known, that he is restricted as to where he can go, and that, as a person with significant intellectual impairments, he receives the habilitation necessary to function in society as a law-abiding citizen.[4] The government has not shown otherwise by clear and convincing evidence.

\* \* \*

_____

"assist[] Mr. Johnson as needed."  Detention Hr'g Tr. (Doc. 31) at 75:6-13.

4. The court also notes that, while Johnson is being released from local detention, the court is entering an order today requiring him to report to a BOP facility for a competency-restoration determination.

15

Accordingly, it is ORDERED that:

(1) The motion to reverse the detention order (Doc. 14) is granted.

(2) Defendant Rickey Johnson shall be released from detention pending trial, subject to home detention (except as demanded by his competency-related proceedings and otherwise allowed by his pretrial officer), the location monitoring program, and a condition that he engage in the intensive mental-health treatment and substance-abuse treatment recommended by Dr. Lokken.

(3) Defendant Johnson is to live at his residence, subject to his pretrial officer having first determined that the location is suitable.

(4) The United States Magistrate Judge shall arrange for defendant Johnson's release subject to the 'standard conditions,' the additional conditions set forth in this

16

order, and any other conditions the magistrate judge believes to be necessary and appropriate.

DONE, this the 11th day of February, 2026.

_____/s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE