IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:25cr586-MHT |
| | ) | (WO) |
| RICKEY JOHNSON | ) | |

OPINION AND ORDER ON RESTORATION DETERMINATION

This cause is before the court on the question of whether defendant Rickey Johnson has the mental capacity to stand trial--that is, whether he is "presently ... suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a).

The court previously found Johnson incompetent to stand trial and ordered him committed to Federal Bureau of Prisons (BOP) custody for a restoration determination, that is, "for a determination of whether he w[ould] attain competency within the foreseeable future,"

pursuant to 18 U.S.C. § 4241(d). *United States v. Johnson*, No. CR 2:25CR586-MHT, 2026 WL 391642, at *1 (M.D. Ala. Feb. 11, 2026) (Doc. 35). After considering the entirety of the record, including the hearing held on October 21, 2026, the court concludes that Johnson is currently mentally competent to stand trial.

## I. BACKGROUND

Johnson was indicted for possessing a firearm as a person with a felony conviction, in violation of 18 U.S.C. § 922(g)(1). He was initially detained pending trial but, based in part on a forensic mental-health evaluation conducted while he was in jail and presented at a hearing on February 3, 2026, this court reversed his detention. Dr. Kristine Lokken's report indicated that Johnson had "significant intellectual and adaptive limitations rather than traits associated with predatory or intentional violence." *United States v. Johnson*, 819

F. Supp. 3d 1276, 1280 (M.D. Ala. 2026) (Doc. 36) (quoting Psych. Evaluation (Doc. 29-1)).

At that February 3 hearing, the court also considered the issue of whether Johnson was competent to stand trial. Dr. Lokken diagnosed Johnson with both Intellectual Disability and significant psychiatric symptoms that further exacerbate his cognitive limitations and functional impairments--most notably post-traumatic stress disorder (PTSD). She concluded that he was not competent to stand trial because he lacked both a rational and factual understanding of the proceedings against him and lacked sufficient ability to consult with his attorney with a reasonable degree of rational understanding. Based on her evaluation, this court concluded by a preponderance of the evidence that Johnson was not mentally competent to stand trial. *See Johnson*, 2026 WL 391642 at *2. Without making any findings about the likelihood that Johnson could be

**restored, the court noted the following observation by Dr. Lokken: "Given the lifelong nature of Mr. Johnson's Intellectual Disability, the severity of his adaptive functioning deficits, and evidence of additional cognitive decline related to neurological injury and chronic substance use, restoration of competency is unlikely. His impairments are not situational, transient, or primarily psychiatric in nature, and are therefore not expected to substantially improve with brief competency restoration services."** ***Id.*** **at *2 n.2 (quoting Psych. Evaluation (Doc. 29-1)).**

**Pursuant to 18 U.S.C. § 4241(d), once a defendant has been found incompetent to stand trial, the court must order that he be committed to the Attorney General for a restoration determination, that is, hospitalization at a BOP facility until it can be determined whether there is a substantial probability that he will regain the capacity to be tried in the foreseeable future.** ***See***

*United States v. Donofrio*, 896 F.2d 1301, 1302 (11th Cir. 1990). Consistent with this provision, both government and defense counsel agreed, and the court ordered, that Johnson should be committed to the BOP for a restoration determination. The court directed the BOP to file a summary report at the conclusion of Johnson's evaluation and treatment stating findings about whether he had attained competency and addressing the likelihood that he could do so.

## II. FINDINGS

The evidence presented at the hearing on October 21, 2026, was as follows. Johnson was committed to Metropolitan Correctional Center Chicago, where BOP forensic psychologist Dr. Drew Miller treated and evaluated him over a statutorily limited four-month period from April to August 2026. *See* 18 U.S.C § 4241(d)(1). Johnson was enrolled in multiple

jail-based restoration groups including the Slater Method competency restoration group, a structured training program specifically designed to help people with intellectual disabilities attain competency. A clinician also met with him for individual psychotherapy on two occasions, and BOP staff reviewed a subset of randomly selected phone calls between Johnson and others, including a friend and various family members, to evaluate his ability to follow conversations, any indications of psychological distress, his mood, and his recall and knowledge of legal proceedings. Clinicians also administered tests including the Wechsler Adult Intelligence Scale, 5th Edition (WAIS-5), the Competency Assessment for Standing Trial for Defendants with Intellectual Disability (CAST*ID), and the PTSD Checklist for DSM-5 (PCL-5).

In early September, Dr. Miller found Johnson competent to stand trial, noting that while in his

**opinion "Johnson suffers from PTSD and Mild Intellectual Disability, his impairment is not to the extent that it significantly interferes with his competency-related abilities." Competency Evaluation (Doc. 66) at 32. Miller gave Johnson a favorable prognosis for maintaining competency, albeit "[w]ith full effort and in the absence of exacerbation of his PTSD symptoms," and described him as able to learn and retain information with "with repetition and discussion."** ***Id.*** **at 33.**

**Dr. Miller's evaluation concurred with Dr. Lokken's in several key respects, including in finding that Johnson has a Mild Intellectual Disability, a low IQ, and PTSD connected to surviving multiple shootings and experiencing severe childhood trauma. However, Miller also found that Lokken's additional diagnoses of Major Depressive Disorder, Generalized Anxiety Disorder, and Panic Disorder were "not evident ... or were better explained by PTSD."** ***Id.*** **at 23.**

**Moreover, while Lokken described Johnson's impairments as "not situational, transient, or primarily psychiatric in nature," Psych. Evaluation (Doc. 29-1) at 2, Miller found that Johnson's PTSD "compounded the cognitive deficits stemming from Mild Intellectual Disability (and perhaps Mild Neurocognitive Disorder) to negatively impact his competency-related abilities," and that, "with time and treatment, Mr. Johnson's PTSD symptoms appear to have been reduced ... such that his competency-related abilities improved substantially." Competency Evaluation (Doc. 66) at 32.**

**At the October 21 hearing, Miller further explained that, while he agreed that Johnson's intellectual disability is definitionally lifelong, there is also a misconception that people with intellectual disability are automatically not competent to stand trial or unable to be restored to competency. To the contrary, Miller estimated that between 70 to 80 % of people with**

**intellectual disabilities are restored. He further explained that, while traditional competency restoration programs, including those that are relatively brief, would probably be insufficient to restore someone with an intellectual disability, the BOP program that Johnson participated in was neither brief nor limited. Miller noted that, while the severity of Johnson's intellectual disability can generally be understood as nonprogressive, his PTSD overlaps with his intellectual disability by impacting his ability to think, reason, learn, remember and apply information. Johnson's competency-related abilities are thus prone to fluctuation as a result of any psychiatric instability, even while his intellectual disability remains stable. In other words, while his intellectual capacity cannot be ameliorated, Johnson's PTSD can be treated, allowing him to attain competency while it remains in partial remission.**

Ultimately, this court understands Miller's determination that Johnson's competency has been restored not as a repudiation of Lokken's prediction that restoration was unlikely, but as reflective of a distinct understanding of the relationship between his intellectual disability and PTSD. Miller's evaluation benefitted from a period of longitudinal analysis in the context of an intensive and extended competency-restoration program.

The court notes that, in light of Miller's analysis of the relationship between Johnson's PTSD and intellectual disability, sustaining Johnson's competency-related abilities requires a two-fold approach. Because of his intellectual disability, Johnson benefits from "encouragement, repetition, rephrasing, and discussion of concepts and situations" to ensure that he remains capable of understanding the nature and consequences of the proceedings against him

and assisting properly in his defense. Competency Evaluation (Doc. 66) at 32. Further, managing Johnson's PTSD symptoms is critical to maintaining his competency-related abilities and preventing any form of regression or decompensation. While Johnson remains in the community pending trial, he must continue to access mental-health resources and professionals.

At the October 21 hearing, defense counsel noted that community-based treatment and resources for Johnson's intellectual disability and associated deficits are extremely limited. However, Miller observed that Johnson's family has and should continue to fill any enduring gap by supporting his adaptive functioning. Miller described Johnson as a hard worker who is strongly motivated by his family, by his desire to return to work, and by a commitment to supporting his young child--strengths that, Miller said, further support a favorable prognosis.

The court recognizes that maintaining Johnson's competency places additional demands on his family members, probation, his defense counsel, and the court itself to adapt to Johnson's strengths and limitations, but that does not negate or undermine his ability to maintain competency.

***

Accordingly, based on all the evidence in the record--including the psychological evaluations and the testimony from the October 21, 2026, hearing, it is ORDERED and DECLARED that defendant Rickey Johnson is currently "able to understand the nature and consequences of the proceedings against him and to assist properly in his defense." 18 U.S.C. § 4241(e).

DONE, this the 28th day of October, 2026.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE